UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-00215-CBM-(JPRx) | Date | November 18, 2024 |
| Title | Tapestry Inc et al v. Triple Five International, Inc. et al | | |

Present: The Honorable **CONSUELO B. MARSHALL, UNITED STATES DISTRICT JUDGE**

| YOLANDA SKIPPER | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| NONE PRESENT | NONE PRESENT |

**Proceedings:**     **IN CHAMBERS- ORDER RE: PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT   [23]**

The matter before the Court is Plaintiffs' Renewed Motion for Default Judgment. (Dkt. No. 23-1 ("Renewed Motion").)

## I.  Background

This is a trademark infringement and counterfeiting case originally filed on January 9, 2024 by Plaintiffs Tapestry, Inc., Coach Services Inc., and Coach IP Holdings LLC (collectively, "Coach" or "Plaintiffs") against Defendant Triple Five International, Inc. ("Defendant"). (Dkt. No. 1 ("Complaint").) On June 24, 2024, Plaintiffs filed a motion for default judgment, which the Court denied without prejudice. (*See* Dkt. No. 22.)  On September 11, 2024, Plaintiffs filed a renewed motion for default judgment. Plaintiffs request damages, attorneys' fees, costs, and a permanent injunction against Defendant from using the trademarks at issue and unfairly competing with Plaintiffs.  (*See* Dkt. No. 23 at 3.)

## II.  Statement of the Law

"A party seeking a default judgment must satisfy the procedural requirements of the Federal Rules of Civil Procedure and Local Rules." *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1125 (C.D. Cal. 2023) (Slaughter, J.).  When a party has failed to plead or otherwise defend, the court may enter a judgment of default upon application by the plaintiff, after an entry of default by the clerk. Fed. R. Civ. Proc. 55(b)(2).  "[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–

18 (9th Cir. 1987) (cleaned up).

The Court's decision to enter a default judgment is a discretionary one. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Court considers seven factors, the "*Eitel* Factors" to determine whether to enter default judgment:

(1) the possibility of prejudice to the plaintiff;
(2) the merits of plaintiff's substantive claim;
(3) the sufficiency of the complaint;
(4) the sum of money at stake in the action;
(5) the possibility of a dispute concerning material facts;
(6) whether the default was due to excusable neglect; and
(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Additionally, Federal Rule of Civil Procedure 55's procedural requirements for a motion for default judgment are incorporated into Local Rule 55-1. Local Rule 55-1 requires that the party moving for default judgment submit a declaration which includes following:

(a) When and against what party the default was entered;
(b) The identification of the pleading to which default was entered;
(c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;
(d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and
(e) That notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2).

L.R. 55-1.

### III.  Discussion

#### A.  Procedural Requirements

The Court finds that Plaintiffs have satisfied the procedural requirements of Local Rule 55-1 and Federal Rules of Civil Procedure 55. Plaintiffs have filed a declaration attesting to these requirements. (*See* Dkt. No. 19-3 ("Fountain Decl.").) Defendant was originally served by Plaintiffs on March 11, 2024. (Dkt. No. 10.) On April 16, 2024, Defendant was served via the office of the Secretary of State. (Dkt. No. 23-2 Decl. of Tara A. Currie ("Currie Decl.") ¶ 5 (citing Dkt. No. 23-4 (Ex. B to Tara A. Currie Decl.).) Plaintiffs determined that Fion Liu, who had resigned as the registered agent for Defendant, was still Defendant's CEO, and that Defendant is still an active corporation in good standing with the State of California. (Currie Decl. ¶¶ 9,10.) A private investigator (hired by Plaintiffs to determine a residence for Mr. Liu) found two addresses but was unable to locate Liu at either. Plaintiffs then mailed the Renewed Motion documents to both addresses associated with Mr. Liu and also "personally serv[ed] the Secretary of State on behalf of Defendant." (*Id*., ¶ 10.)

B.  *Eitel* Factors

The Court also finds that on balance, the *Eitel* factors weigh in favor of entering default judgment.

First, Defendant has failed to appear or respond to this action and is likely to continue infringing on Plaintiffs "COACH" trademarks. Thus, Plaintiffs will be left without recourse if default judgment is not granted and are likely to be prejudiced as a result. *See Sunteck Trans. Co., LLC v. Domestic Carrier, Inc.*, 2022 WL 17348190, at *3 (C.D. Cal. Sept. 19, 2022) ("A plaintiff suffers prejudice if they have no recourse for recovery absent default judgment"); *Philip Morris USA, Inc. v. Castworld Prods, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (finding that the plaintiff satisfied the first *Eitel* factor because the plaintiff would be prejudiced if default judgment was not entered as plaintiff would be without other course for recovery) *overruled on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016).

Second, Plaintiffs have alleged facts supporting trademark infringement. Because Plaintiffs have sufficiently pled that (1) Defendant sold products bearing marks that were identical or substantially similar to Plaintiffs' registered marks, and (2) these spurious marks were registered by Plaintiffs for use on the same type of goods that Defendant used its counterfeit marks on, Plaintiffs have established trademark counterfeiting by the Defendant and thus have necessarily pled their trademark infringement claim. *See Avaya Inc., v. Pearce*, 2019 WL 32880, at *4 (N.D. Cal. July 18, 2019) ("The [First Amended Complaint] alleges how [defendant] has engaged in trademark infringement and counterfeiting, and thus Avaya has sufficiently alleged its §1114 claim"); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (finding it "unnecessary to perform the step-by-step examination [of the *Sleekcraft* factors] because counterfeit marks are inherently confusing").

Third, Plaintiff alleges Defendant is liable under the Lanham Act for statutory damages of up to $2,000,000 for non-willful infringement and up to $20 million for willful infringement of Plaintiffs registered marks. (Renewed Mot. at 14.) Though these statutory damages may be inflated, they do not appear unreasonable given the level and seriousness of infringement and misconduct.

Fourth, "there is little possibility of dispute over material facts" given that Plaintiffs have pled "the facts necessary to prevail on [their] claims" and Defendants have not filed anything to challenge Plaintiffs' allegations (nor appeared in the case at all). *Sunteck Transp. Co., LLC*, 2022 WL 17348190, at *4.

Fifth, "[t]here is little possibility of excusable neglect when the plaintiff properly serves the defendant, and the defendant is aware of the litigation." *Sunteck Transp. Co., LLC*, 2022 WL 17348190, at *4. Defendant had actual notice of this action because the Complaint was served on Defendant. No other filings suggest the existence of excusable neglect, as Defendant has not appeared or filed anything in this action.

Sixth, although cases "should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, Defendant's failure to participate in this case "makes a decision on the merits impractical, if not impossible." *Pepsico*, 238 F. Supp. 2d at 1177.

C.  Remedies

The Court finds that $513,304 in statutory damages, $13,866 in attorneys' fees, and $1,031.81 in

costs is appropriate.  Plaintiff alleges that CBP seized approximately 689 counterfeit goods from Defendant.  (Renewed Mot. at 4.)   Plaintiffs represent that each of these items "retail at an average of $195.00-$295.00 per unit" for handbags, and "$425.00-$550.00" per unit for backpacks.  (Dkt. No. 23-2 ("Currie Decl."), ¶ 12.)   However, Plaintiffs seek $1,800,000 in damages, corresponding to $200,000 per counterfeit mark per type of good sold.   "[W]here a plaintiff cannot reasonably estimate actual damages, and especially where it shows only a few sales related to the counterfeit mark, courts are disinclined to award the maximum statutory damages at the risk of a windfall."  *GS Holistic, LLC v. Crown Smoke & Vape, Inc.*, 2023 U.S. Dist. LEXIS 131257, at *5–6 (C.D. Cal. July 27, 2023).[1]   Plaintiffs estimate that the 689 counterfeit products seized amounts to lost revenue between $134,355 and $378,950. (Renewed Mot. at 17.)   The median of this range, $256,652, is an amount sufficient to deter Defendant and others from further infringement upon the Coach trademarks and protect the value of the Coach trademarks without awarding an amount that would be "grossly disproportionate to Coach's actual damages." *Coach, Inc. v. Diva Shoes & Accessories*, 2011 WL 1483436, at *8 (finding award of $140,000 appropriate instead of the $1,000,000 requested).[2]   Attorneys' fees based off of $256,652 in statutory damages amounts to $8,733.04 (2% of $156,652 plus a $5,600 base fee, under Local Rule 55-3).   Finally, Plaintiff seeks $1,031.81 for fees relating to filing and proof of service, which the Court grants.  *See* Fed. R. Civ. Proc. 54(d)(1); L.R. 54-1 (stating the prevailing party, or "the party in whose favor judgment is entered," is entitled to costs).

The Court also grants Plaintiffs' request for a permanent injunction against Defendant.  Permanent injunctive relief is warranted if: (1) a plaintiff will otherwise suffer irreparable harm, (2) there is a lack of adequate remedies at law, (3) the balance of hardships weighs in the plaintiff's favor, and (4) the injunction is in the public's interest. *See Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1057 (C.D. Cal. 2011).  Moreover, "injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendant's continuing infringement."  *Cent. 21 Real Estate Corp v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).   The Court finds that these factors for injunctive relief weigh in favor of Plaintiffs.

IV.     **Conclusion**

Plaintiffs' Renewed Motion for Default Judgment is **GRANTED**.  The Court awards Plaintiffs $256,652 in damages, $8,733.04 in attorneys' fees, and $1,031.81 in costs.  The Court also **GRANTS** Plaintiffs' request for a permanent injunction.

**IT IS SO ORDERED.**

---

[1] *See also GS Holistic, LLC v. Zee Smoke Shop, Inc.*, 2023 WL 5504933, at *2 (C.D. Cal. July 3, 2023) (awarding $150,000 in statutory damages willful infringement of three marks); *Adobe Sys., Inc. v. Dafang USA, LLC*, 2019 WL 7841862, at *8 (C.D. Cal. Aug. 22, 2019) (awarding $300,000 in statutory damages for defendants' infringement of five of plaintiff's products on ten different websites and to deter defendants from future infringement); *Photoscience Japan Corp. v. Pacific Ultraviolet Inc.*, 2021 WL 4775999 (C.D. Cal. Aug. 24, 2021) (awarding $300,000 in statutory damages for willful infringement of one mark on two types of goods).

[2] Plaintiffs' citation to *Phillip Morris*, where the Court granted $2,000,000 in statutory damages, is not persuasive because in that case, the defendant imported 8,000,000 counterfeit cigarettes.  *See Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494 (C.D. Cal. 2003).   No such volume of counterfeit items is alleged here.  *See Coach, Inc. v. Diva Shoes & Accessories*, 2011 WL 1483436, at *7 (N.D. Cal. Apr. 19, 2011) (finding Coach's reliance on *Philip Morris* misplaced for the same reason).